## Cunningham et al. v. Sublett's Adm'r.

January 20, 1948.

E. J. Stahr, Judge.

702

Terrell & Schultzman and M. C. Anderson for appellants.

F. B. Martin and Edmond Wroe for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

The administrator of Henry D. Sublett, deceased, appellee, having recovered damages for his decedent's death in the amount of $7,000 against W. M. Cunningham and others, appellants, the latter now bring us this appeal.

As grounds for reversing the judgment, it is contended (1) that appellants were entitled to a directed verdict and (2) that the instructions to the jury were prejudicially erroneous.

Henry D. Sublett, a little toddling boy about 16 months old, was run over and killed beneath the truck of appellants, who are gasoline distributors, in the afternoon of September 27, 1944, immediately after the truck had delivered to the Sublett home 50 gallons of gasoline which was transferred into a drum located on the premises. The only testifying eyewitness to this tragic occurrence was the truck driver himself, Orville Gunter, whose evidence was introduced by appellee as the sole support of his contention that appellants should be answerable in damages because of negligence on the part of Gunter upon this occasion. Gunter testified, in substance, that he drove the truck into a field or large lot at the Sublett place and that he pulled up beside a gasoline drum to deliver the gasoline previously ordered by Sublett; that the drum was located next to a fence within the large lot and which fence enclosed the Sublett home within a smaller lot; that the drum was also located about 40 feet south of a gate connecting the larger

and smaller lots; that he was engaged in transferring gasoline from appellants' truck to Sublett's drum when two of the Sublett children, a little 5 year old girl and the little 16 month old boy, Henry, came from the porch of the Sublett home down through the gate and over to the motionless truck; that he talked with the girl and then turned and looked toward the rear of the truck just as the little boy turned away from the rear of the truck and headed toward the gate and in the direction of the Sublett home; that he last saw the little boy alive as he stood at the gate, which was about 20 feet from the rear of the truck; that he finished the job of transferring gasoline to the drum, then went to the rear of the truck and put his transferring bucket in its compartment, then returned to the side of the truck next to the drum and there closed up the dispensing apparatus, then went to the rear of the truck a second time, going clear around it on the second trip in order to enter the driver's seat at the left side; that he sat in the driver's seat and wrote out a sales ticket and gave it to the little girl as she stood near the cab of the truck; that he then started the truck and turned it in a leftward circle in preparation of leaving the larger lot of the Sublett premises and returning to the highway; that he felt the truck wheels bounce on something, which he then investigated and found was the little boy whose life had been crushed out beneath the rear wheels of the truck; that the little boy had not been seen at either time when Gunter was at the rear of the truck just before he got in the driver's seat and prepared to drive away.

Appellants contend that they were entitled to a directed verdict on the basis of the above testimony, because the appellee, they say, therein produced no proof to show that Gunter, appellants' truck driver, was negligent on this occasion. We find ourselves unable to agree. Under ordinary conditions of dealing with adult persons, Gunter would not have been careless at all under the circumstances of this case. But destiny, on this occasion, placed in his hands temporary responsibility for the safety of a little child, which was not a trespasser and which was not capable of contributory negligence. Had little Henry been a grown-up or even a child of mature years of sound discretion, then Gunter need not have considered the possibility that he might

be playing around under the truck. However, all reasonably prudent persons and prudently reasoning persons must surely realize that any baby, whether one's own or that of one's neighbor, is likely to be found playing around beneath one's feet or with the snakes or lizards under one's back porch or beneath the wheels of one's truck entirely oblivious of any danger from any deadly or imminent peril nearby. The duty we owe to a very small child playing under our heels or wheels is perhaps a kind of twain mile obligation, and it is doubtless one that traces its origin to unusual depths of human compassion. We think the possibility was too manifest in this case that the baby might be lingering closely about with his older sister, who stayed at the side of the truck until it started, and that Gunter as a reasonably prudent person, ought to have thoroughly investigated that possibility before driving away. A somewhat similar situation was adjudicated by this court in the case of Tupman's Adm'r v. Schmidt, 200 Ky. 88, 254 S. W. 199, 200, wherein the truck driver had observed all the ordinary precautions that a reasonably prudent person might observe toward adult persons, but had nevertheless failed to exhaust the reasonable possibilities of investigating the whereabouts of a little child whom he knew to have been playing about the truck shortly before the fatal occurrence of that case. We said:

"Under this evidence, if the driver had been dealing with a normal adult in full possession of his faculties and senses, it appears to be indisputable that he was free from negligence. But he was dealing with an infant of tender years. As a normal man of reasonable intelligence he knew from the size and appearance of the infant he had not reached the age of discretion. * * *

"It will be observed that the driver, after cranking his car, says he looked back where he had placed the child and the wagon and failed to see them, and likewise failed to see them among the other children playing near by; but he does not say that he stepped to the back of the machine to ascertain whether this infant was out of danger, or that he even stooped down to look under the truck to see whether he might be back there."

Following the same legal conceptions we followed in the Tupman case above, we consider it now proper

to hold that this was a case for jury determination. We believe that the trial court committed no error in refusing to direct a verdict for the appellants under the proven circumstances of this case.

Appellants also contend that certain instructions to the jury were prejudicially erroneous. Specifically they say that Instruction E contained some redundant material. We agree that it did. However, we do not believe that the redundancy of this instruction was of prejudicial nature. We firmly believe that this jury had intelligence sufficient to understand from the entirety of these instructions and from the arguments advanced by able counsel in this case that the main decision to be reached was merely that of whether or not Gunter was negligent in his failure to discover and remove this baby from under the truck.

Where it reasonably appears that an error did not mislead the jury, or was such that it did not superinduce or bring about an unjust verdict, a new trial will not be awarded nor the judgment reversed. Fowler v. Commonwealth, 157 Ky. 725, 163 S. W. 1115; W. H. Simmons & Co. v. Price's Adm'r, 238 Ky. 332, 38 S. W. 2d 6.

Still further error was committed, appellants say, in the court's instruction H which told the jury, in substance, that it was the truck driver's duty, if he observed this little child around the truck, "to take all precautionary measures to avoid injury of said child." Appellants say that the quoted language overemphasized the driver's duty. But we do not think so. We believe that this was about the equivalent of saying that the driver must use ordinary care, such as that characterizing a reasonably prudent person, to avoid injury to a child of the size and age of this little boy. This latter type of instruction was, in fact, included elsewhere in the full complement of the court's instructions as they were submitted to the jury upon this trial. We perceive that the court's instructions to the jury on this trial were, in some details, admittedly imperfect, just like the life of a sinner saved by grace, yet we believe that such imperfections were not, on the whole, such as to mislead the jury or such as to prejudice appellants' substantial rights in this case.

The courts should disregard such errors or mis-

takes as do not affect the substantial rights of the complaining party. Mere inaptness of statement in the instructions is not a reversible error, if they are substantially correct. Pugh v. Eberlein, 190 Ky. 386, 227 S. W. 467.

Where an instruction taken as a whole fairly and properly expresses the law applicable to the case, no just ground for complaint exists, even though an isolated or detached clause or expression is in itself inaccurate or incomplete. Hartsfield v. Pace, 189 Ky. 93, 224 S. W. 647.

And so, we now conclude that this was a case for the jury and that the court's instructions, although imperfect, were not prejudicially erroneous.

Wherefore, having found no reversible error in the record of the trial of this case, the judgment is now hereby affirmed.