106 So.2d 593 (1958)
COAST CITIES COACHES, Inc., a Florida corporation, and Walter Zajac, Appellants,
v.
Paul C. DONAT, Appellee.
No. 58-13.
District Court of Appeal of Florida. Third District.
November 18, 1958.
Rehearing Denied December 12, 1958.
*594 Knight, Smith, Underwood & Peters, Miami, for appellants.
Prebish, DuVal & Foard, Miami, for appellee.
CARROLL, CHAS., Chief Judge.
The appellants, defendants below, appeal from a judgment entered on a jury verdict for the appellee-plaintiff Paul C. Donat, in an action brought by him for damages recoverable under section 768.03, Fla. Stat., F.S.A., for the wrongful death of his six year old minor child.[1] The child was struck and killed by a passenger bus owned by the defendant corporation, in use as a school bus, and being driven by the individual defendant.
Defendants' motions for directed verdict, made at the close of plaintiff's case, and after all evidence was in, were denied. Motions filed by defendants after the verdict, for judgment in accordance with the motions for directed verdict and for new trial, also were denied. Thirty-five errors were assigned, and based on seventeen of them, the appellants here state three questions:
"I. Where the undisputed evidence shows that a small child suddenly went in front of a bus and was instantly struck by it, at the precise moment when the bus was just starting slowly forward from a stopped position, and where the driver of the bus was not aware of the presence of the child, and where the child was so close to the front of the bus that it was impossible for the driver to have seen the child, with the driver sitting in his seat in an upright position, would a jury be authorized to find the driver guilty of actionable negligence?
"II. Where there was no evidence, in the trial of an action by a father for the wrongful death of his 6 1/2 year old girl child, that either the father or the mother of the child endured more than the ordinary grief of normal parents, is a verdict in the amount of $45,000.00 in favor of the father authorized?
"III. Is it error for the jury to consider the father's mental incompetency, in an action by him for the wrongful death of his child, as an element of damages when making an award for the mental pain and suffering of the child's parents?"
The first question must be answered adversely to the contentions of appellants. The area of the accident was one in which children were to be expected. The bus driver saw this child following the bus. At the stop in question, a number of school children alighted from the bus. The child overtook the group, and passing among them went in front of the bus, and was within an arm's length of the bus when it started up. From his position in the bus the driver could not see the child in front of the bus. The driver did not see the child before the bus struck her, and he did not know, until pursuing children hailed him, that he had struck the child. Before starting up the driver gave no signal, such as by sounding the horn, and he did not get up out of his seat to look directly in front of the bus before proceeding. The question of his negligence was one for the jury.
In the similar case of Miami Paper Co. v. Johnston, Fla. 1952, 58 So.2d 869, it was held that whether the driver was guilty of negligence was a question to be determined by the jury. In the Miami Paper Co. case, *595 the driver of a delivery truck stopped and made a delivery in an area where children were known to be numerous. After making a delivery, he returned to the truck and started out without first ascertaining if a child was in front of the truck, as in fact one was. In that case the Supreme Court said (58 So.2d at pages 870-871):
"* * * when the driver made his delivery he proceeded to the rear of the truck, looked down the righthand side and saw nothing. He then walked along the left side of the truck and saw nothing, he mounted the driver's seat but did not look in front of the truck. He started forward without blowing his horn. When he had proceeded from three to five feet he felt a thud. * * *"
"Under this state of facts, we think the question of negligence was properly submitted to the jury and whether or not the driver of the truck was negligent in not looking in front of the truck before he started was a jury question. He was on notice that many children lived and played about the trailer park, that it was a private enterprise and catered to families and that children were playing near when he parked the truck. It is a matter of common knowledge that small children are erratic and unpredictable, that they are liable to take off at any time and in any direction with no concern whatever for their own safety. The drivers of motor vehicles are charged with knowledge of their behavior and are expected to govern themselves accordingly when parking or driving about school grounds, recreation parks, residential communities, trailer parks and other places inhabited by or frequented by children. They are expected to anticipate children about such places and whether or not they exercise reasonable care in doing so is a question for the jury.
"The general rule supported by a wealth of authority is that one manipulating a motor vehicle on the highway, whether backing, starting, or proceeding ahead, must exercise reasonable care, circumstances being the guide as to what constitutes reasonable care. If he has reason to think that children may be near, reasonable caution requires that he be on the lookout for them. Gorzeman v. Artz, 13 Cal. App.2d 660, 57 P.2d 550; Jackson v. State Farm Mutual Automobile Insurance Co., La. App., 32 So.2d 52; Cunningham v. Sublett's Administrator, 306 Ky. 701, 208 S.W.2d 509; Frederiksen v. Costner, 99 Cal. App.2d 453, 221 P.2d 1008; Jacklich v. Starks, 338 Ill. App. 433, 87 N.E.2d 802; 60 C.J.S. Motor Vehicles § 396(d), p. 972."
On the second question under which it is claimed that the $45,000 verdict in this case is excessive, appellant cited Kenan v. Black, 150 Fla. 208, 7 So.2d 462, in which a $15,000 verdict was reduced to $7,500 in a case involving wrongful death of an eleven year old girl, and City of Miami v. Thigpen, 151 Fla. 800, 11 So.2d 300, which involved the death of a child eleven months of age, and where the verdict of $12,500 was reduced by the trial court to $10,000, and further reduced by the Supreme Court to $8,000. In those cases the Supreme Court did not explain or give the reasons for the reduction. In response, appellee cited two later Florida cases involving damages for wrongful death of a child, Hooper Const. Co. v. Drake, Fla. 1954, 73 So.2d 279, and Rhodes, Inc. v. Knowles, Fla. 1958, 99 So.2d 302. In the Hooper case the approved damages were $35,000. The Rhodes case was a per curiam affirmance without opinion, and we are told by appellees' brief that the verdict which was approved in that case was for $40,000. Appellee also cites Reed v. Eubanks, Miss. 1957, 98 So.2d 132, showing an approved verdict for $40,000 for the wrongful *596 death of an eight year old child, and the South Carolina case of Mock v. Atlantic Coast Line Railroad Company, 227 S.C. 245, 87 S.E.2d 830, with an approved verdict of $50,000 compensatory damages and $15,000 punitive damages for the wrongful death of a twelve year old boy.
As an appellate court, we may not in this case hold that the trial court abused its discretion in failing to grant a new trial because of the size of the verdict, or by failing to order a remittitur in reduction of the verdict. We are unable to view the verdict as so excessive as to indicate passion or bias on the part of the jury. While appellants contend that the evidence was insufficient to prompt and sustain a verdict in the amount found, there is no showing of bias or improper influence on the jury.
Our statute allows damages not only for the loss of services of the minor child but for the mental pain and suffering of parents as the jury may assess. It would not be material to our consideration of this question for us to concern ourselves with the details to be gleaned from the evidence as to the history, habits, appearance and characteristics of the deceased child. The mental pain and suffering of the parents of the child are not to be measured by how the child might appear in the eyes of the appellate judges or of counsel. It was the effect in pain and suffering on the parents, of the loss of their own child, with which the jury was concerned, and which the jury had the opportunity and the duty under the statute to assess.
The language of the Mississippi court in Reed v. Eubanks, supra, is applicable here (98 So.2d at page 138):
"It may be readily conceded that the amount of the verdict is larger than the verdicts that have been rendered in most cases that have come before this Court which involve the death of a minor child, and in which punitive damages have not been allowed. But there is no exact yardstick, or measurement, which this Court may use as a guide to determine the size of verdicts which should be permitted to stand in cases of this kind. Each case must depend upon its own facts, and the test to be applied by us is not what amount the members of the court would have awarded had they been on the jury, or what they, as an appellate court, think should have been awarded, but whether the verdict is so excessive as to indicate that the jury was animated by passion, prejudice, or corruption. * * *"
The Florida Supreme Court in Little River Bank & Trust Co. v. Magoffin, Fla. 1958, 100 So.2d 626, 627, said:
"It has long been the settled rule in this jurisdiction that damages in a personal injury action are for the discretion of the jury. Unless `clearly arbitrary', Sproule v. Nelson, Fla. 1955, 81 So.2d 478, or `so excessive as to indicate that the jury was influenced by passion, prejudice, corruption, or other improper motive,' Upton v. Hutchison, Fla. 1950, 46 So.2d 20, 21, or `so much greater than it should have been as to shock the judicial conscience,' Bartholf v. Baker, Fla. 1954, 71 So.2d 480, 484, the amount awarded by the jury will not be disturbed on appeal. The burden is on the appellant to establish the fact that the verdict is wholly unsupported by the evidence or was the result of passion, prejudice or other improper motive. Bartholf v. Baker, supra."
On this record the appellant has failed to establish that the verdict is wholly unsupported by the evidence, or was the result of improper motives or influences.
The third question presents the appellant's contention that the resultant mental incompetence of the father was not a proper element for consideration in allowing *597 damages for mental pain and suffering of the child's parents. There was substantial evidence that Donat's altered and impaired mental condition was the result of the untimely and tragic loss of his child. The more precise question involved is whether a parent's mental change or illness, brought on as a result of the loss of his child, may be considered as an element or part of "mental pain and suffering of the parent" as a basis for allowance of damages under the statute. We feel that question has been answered against the contention of appellants, by the Supreme Court in the case of Winner v. Sharp, Fla. 1949, 43 So.2d 634, which was an action by a parent for the wrongful death of an infant daughter. In that case the Supreme Court, speaking through Mr. Chief Justice Terrell, said (43 So.2d at pages 636-637):
"* * * Those who have not brought a child into the world and loved it and planned for it, and then have it suddenly snatched away from them and killed can hardly have an adequate idea of the mental pain and anguish that one undergoes from such a tragedy. No other affliction so tortures and wears down the physical and nervous system. Psychosomatic illness of a serious nature may follow. The emotions may be unstrung, the nerves put on edge and the end effect may be a period in a rest home, a mental hospital, serious physical derangement and sometimes death. Damage for mental pain and suffering is one of the late developments in the law and its potentialities are not restricted as they formerly were because so much has been learned of the evil consequences that flow from mental injury. * * *"
The judgment appealed from is therefore affirmed.
Affirmed.
HORTON and PEARSON, JJ., concur.
NOTES
[1] Section 768.03, Fla. Stat., F.S.A., as to damages recoverable thereunder provides that "the father of such minor child, * * * may maintain an action * * * and may recover, not only for the loss of services of such minor child, but in addition thereto, such sum for the mental pain and suffering of the parent (or both parents) if they survive, as the jury may assess."