SEBRING, Justice.
This is an appeal from a final judgment entered upon a verdict directed in favor of the defendant company at the close of the plaintiff’s case in chief, in a negligence action by a personal representative on behalf of her decedent, consolidated for trial with an action for wrongful death.
According to the record, Northeast 6th Avenue runs north and south through Miami Shores, Florida. Northeast 92nd Street, which adjoins the avenue on the west, runs in a westerly direction. The 100-foot right of way of the Florida East Coast Railway Company crosses Northeast 6th Avenue in a northeasterly and southwesterly direction, within a few feet of the southerly junction with Northeast 92nd Street. Down the center portion of the right of way are the northbound and southbound main line tracks of the company.
On April 18, 1951, the Florida East Coast Railway Company gave written permission to the Department of Water and Sewers of the City of Miami to dig a trench and lay a water pipe line from south to north across this right of way where the same crosses over the pavement of Northeast 6th Avenue; the trench to be located parallel with and 8 feet west of the center line of the avenue.
When the work crew of the city began the project pursuant to the agreement, it was joined by a bridge crew of the railway company, whose primary duty it was to shore up the tracks at the point where the trench was to be dug under the railway tracks of the company. During the period of time the city crew was actually engaged in digging the trench under the tracks, the foreman of the bridge crew would warn the workmen each time a train was due and thereupon both crews would leave the trench until the train had passed.
After some four and one-half days engaged in digging the trench, the city crew had progressed with the project to the point that pipe had been laid under and beyond the main line tracks and to within a few feet of the northwesterly boundary line of the right of way.
On the morning the accident which forms the basis for this litigation occurred, the crew began removing from the bottom of the trench loose sand and dirt that had caved in from the sides as the result of a rain that had fallen in the area the night before. After they had finished this job and were engaged in laying the pipe a switch crew of the defendant company began switching box cars in the immediate vicinity. During the course of switching, the switch engine, engaged in cutting out freight cars to a connecting side track, passed up and down the southbound main line track several times. While engaged in this operation the switch engine let a freight car roll free along the southbound main line track to couple with a standing car approximately 100 to 150 feet from the spot where the city crew was working. According to one of plaintiff’s witnesses, the moving car hit the standing car with a heavy impact, made a loud noise when it “jarred the other car,” and “caused a vibration” of the earth around the excavation. Simultaneously with this noise and impact a slab of asphalt pavement, under which the city crew had tunneled the trench for some inches, caved in upon the members of the crew working at the bottom of the excava *815 tion, and Solomon Davis, the plaintiff’s intestate, received injuries from which he died.
Upon this evidence, which, of course, comes wholly from the plaintiff’s witnesses, the trial court, at the close of the plaintiff’s case in chief, directed a verdict in favor of the defendant, and this appeal followed.
The primary issue raised on appeal is with reference to the applicability of section 768.05, Florida Statutes 1951, F.S.A., to the facts of the case at bar. This section provides that “a railroad company shall be liable for any damage done to persons * * * by the running of the locomotives, or cars * * * of such company * * * unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company.” The appellant contends that under the allegations of the complaint and the proof offered to support them, it was error for the court to direct a verdict against the plaintiff without requiring of the defendant that it submit proof that its agents “exercised all ordinary and reasonable care and diligence” in the circumstances.
In dealing with this question it should be noted that the complaint filed by the plaintiff alleged, in respect to the negligence of the defendant company, that the company “switched freight cars by a locomotive when they knew, or should have known, that by reason of the weight and size of said locomotive the said switching •thereof being in such close proximity to the excavating, would cause such a vibration of earth as would result in a cave-in.” When viewed in the light most favorable to the plaintiff, it might be said that the evidence offered in support of the allegations, to the effect that the cars came together with a heavy impact causing the ground to shake and vibrate, and that simultaneously therewith the trench caved in and partially buried the workmen, is susceptible of interpretation as proof, at least circumstantial, that the impact of the freight cars coming together in the switching operation caused the. cave-in and the resulting injury. Florida East Coast Ry. Co. v. Smith, 61 Fla. 218, 55 So. 871; Colle v. Atlantic Coast Line Ry. Co., 153 Fla. 258, 14 So.2d 422; Lawson v. Loftin, 155 Fla. 685, 21 So.2d 202. If perhaps the plaintiff had been content to stop with such proof, initially, and had not gone further, there might be some substance to the argument that with the aid of the statute a prima facie case had been sufficiently established to require of the defendant that it go forward with the evidence and establish reasonable diligence and care. But the plaintiff did not rest her case on mere circumstantial proof of causation but went further, and attempted to substantiate the allegations of her complaint by the submission of direct evidence bearing on the issue of negligence and proximate cause. In this endeavor, she called as a witness in her behalf the defendant’s engineer who had been operating the switch engine and questioned him at length with reference to the manner in which the switching operations were being carried on at the. time of the accident. From him she developed the facts, as to which she is bound, that all during the four and one-half day period the trench was being dug the defendant had been conducting switching operations at the same time and.place every morning without suggestion from anyone that what it was doing might _ endanger the city crew; that the switching of cars during the period had been carried on under orders from the company not to travel over the area at more than 10 miles an hour; that on the morning of the accident there was no rough or unusual handling of the cars but that the switching operations were carried on in a prudent manner; that when the switch engine let the car go free it was not traveling over 5 miles an hour; and that when the rolling car made contact with the standing car it was going at a speed of approximately 1 mile an hour.
Assuming for the sake of argument that under the initial circumstantial evidence offered by the plaintiff to prove *816 that the cave-in was caused by the running of the cars of the defendant there arose by virtue of section 768.05, supra, a presumption of liability requiring of the defendant that it go forward with the proofs, it is made clear by our decisions that “the presumption raised by the statute is not ‘such a presumption as will outweigh proofs, or that will require any greater or stronger or more convincing proofs to remove it * * * all that the statute does in creating the presumption is thereby to cast upon the railroad company the burden of affirmatively showing that its agents exercised all ordinary and reasonable care and diligence, and here the statutory presumption ends.’ Seaboard Air Line R. Co. v. Thompson, 57 Fla. 155, 48 So. 750, 751 * * * this ‘affirmative showing’ may conceivably be made by the plaintiff’s own witnesses on their direct examination, or by the company’s cross-examination of them. If so, there [is] no need for the defendant to put on any witnesses of its own, so far as the statutory presumption is concerned.” Atlantic Coast Line R. Co. v. Webb, 112 Fla. 449, 150 So. 741, 748.
Under these decisions, it seems plain that the court below properly determined that in view of all the surrounding facts and circumstances no inference could be drawn from the evidence in the case that defendant “knew, or should have known, that by reason of the weight and size of said locomotive the said switching * * * would cause such a vibration of earth as would result in a cave-in” at the site of the excavation 100 to 150 feet removed from the point at which the slowly moving car came in contact with the standing car in order to make a coupling. Indeed, it appears to us that the trial court acted well within its sphere of competence when it determined, in effect, upon the evidence and all reasonable inferences deducible therefrom in favor of the plaintiff, that the unfortunate occurrence was one that could' not reasonably have been foreseen at the time and place in question'; that the defendant company was entitled to assume that the members of the city crew, who were aware that switching operations were being conducted in the area, would take such reasonable precautions as would be necessary for their safety; that otherwise, reasonable care on the part of the railway company would require only that the railroad’s operations be carried on in the usual and ordinary manner, with due regard for the presence of the workmen; and that to place any greater burden upon the railway company, under the circumstances presented, would 'make the railway company virtually an insurer. In the face of such a determination that the evidence offered by the plaintiff showed affirmatively the exercise of ordinary and reasonable care on the part of the defendant, the provisions of section 768.05 were inapplicable, the statutory presumption vanished from the case, and judgment was properly rendered on the facts in proof.
The distinction between this case and Lawson v. Loftin, supra, involving injury to a passenger as the result of a sudden jolt of the train which caused her to fall, lies in the nature of the alleged negligent act and the reasonable foreseeability of the likelihood of possible injurious consequences. Compare Railway Express Agency v. Brabham, Fla., 62 So.2d 713, 718; Western Union Telegraph Co. v. Taylor, 94 Fla. 841, 114 So. 529; Lindsay v. Thomas, 128 Fla. 293, 174 So. 418.
Some argument is addressed by the plaintiff to the question of the status of the decedent workman as a known licensee or a business invitee on the railroad premises at the time of the accident, and the degree of care owed to a person occupying each respective position. But, in view of our conclusion that the evidence affirmatively shows the exercise of ordinary and reasonable care in the circumstances, which, at most, is the measure of duty owed a pérson occupying either legal status, it becomes immaterial, on this appeal, whether the plaintiff’s intestate occupied the position of licensee or business invitee' at the time of the occurrence of the accident. But see Butler v. Southern R. Co., 63 Fla. 95, 58 *817 So. 225; Georgia, F. & A. Ry. Co. v. Cox, 75 Fla. 714, 79 So. 276; Atlantic Coast Line R. Co. v. Webb, supra; Powell v. Marcus, 127 Fla. 203, 172 So. 857.
From the conclusions reached, it follows that the judgment appealed from should be affirmed.
It is so ordered.
ROBERTS, C. J., HOBSON, J., and PATTERSON, Associate Justice, concur.